IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID MCCLURE, ET AL.          *

          Plaintiffs           *

          vs.                  *  CIVIL ACTION NO. MJG-17-1198

                               *

JAMES PORTS, ET AL.
                               *
          Defendants
*      *      *      *      *      *      *      *      *

MEMORANDUM AND ORDER

The Court has before it Defendants' Motion to Dismiss, Or
in the Alternative, For Summary Judgment [ECF No. 29], and
Plaintiffs' Motion for Discovery in Response to Defendants'
Motion for Summary Judgment [ECF No. 33].  The Court has held a
hearing and has had the benefit of arguments of counsel.

I.   BACKGROUND

     A. The Parties

     Plaintiff David McClure ("McClure") is the President-
Business Agent of Plaintiff Amalgamated Transit Union (ATU)
Local 1300 ("Local 1300"), a local labor organization
representing certain employees of the Maryland Transit
Administration ("MTA").[1]  McClure was an employee of the MTA who
is on leave from active service so that he can serve as union

---

[1] Local 1300 represents MTA "transportation and operational
support employees."  Williams Decl. ¶ 8, ECF No. 29-2.

president.  First Amended Complaint ("FAC") ¶ 54, ECF No. 25.

Defendants are officers of the Maryland Department of

Transportation ("MDOT") and/or agents of the MTA: James Ports

(Deputy Secretary of MDOT), Earl Lewis (Deputy Secretary of

MDOT), Louis Jones (Director at MDOT), and Kevin Quinn (Acting

Administrator of MTA).  FAC ¶¶ 10-13.  Defendant Kevin Quinn

replaces Paul Comfort, who was named as a Defendant in the

original Complaint but has since left his position.  Id.

Together, Plaintiffs bring several claims under Section

1983 for unlawful reprisal of protected speech and denial of

their freedom of association.  McClure alone asserts a Fourth

Amendment unlawful seizure claim under 28 U.S.C. § 1983.

Plaintiffs seek a declaratory judgment and injunction,

compensatory and punitive damages, and legal fees.

B. Facts as Alleged in the Complaint[2]

McClure and Local 1300 have engaged in two public campaigns

"aimed at improving Baltimore's public transit."  FAC ¶ 1.  The

first campaign began in July 2016, when Plaintiffs issued a

report and a press release on safety hazards in Baltimore's

subway system and criticized Defendants for "endangering the

safety of the public riding the Baltimore Metro."  Id. ¶ 20.

---

[2] Except as otherwise indicated, the "facts" herein are as stated
in the First Amended Complaint, and are not agreed upon by the
Defendants.

McClure alleges that Defendant Ports, Deputy Secretary of Operations for MDOT, "got into a heated discussion with McClure" about this campaign and stated "I can get you." Id. ¶¶ 29-30.

The second campaign began in September 2016, when Plaintiffs issued a "People's Plan for Baltimore Transit" which criticized Maryland's Department of Transportation and Governor for implementing the "BaltimoreLink" program instead of investing more in Baltimore's transit systems. Id. ¶¶ 1, 19. Plaintiffs have "leafleted," "circulated petitions," and "hosted town hall meetings" to allow members of the public to express their opinions about BaltimoreLink. Id. ¶ 35.

In addition to managing these public campaigns, McClure regularly participates in disciplinary due process hearings on behalf of his members.

On September 15, 2016, McClure attended one of these hearings. Id. ¶ 39. Because the employee who was the subject of the hearing had retired, McClure sought to withdraw the employee's grievance and forgo the hearing on his behalf. Id. ¶ 42. The hearing officer, Ms. Vastina Holland-Brown ("Holland-Brown"), refused to allow McClure to withdraw the grievance. Id. ¶ 48. McClure and Holland-Brown then had a verbal exchange about her competency to hold the hearing. Id. ¶¶ 50-51. McClure's statements offended her and caused her to stop the

hearing.[3]  Id.  After the incident, Holland-Brown filed an
internal EEO charge with the MDOT Office of Diversity and Equity
alleging that McClure "harass[ed]" her verbally.[4]  Id. ¶ 53.

In the instant case, Plaintiffs contend that the Defendants
engaged in two sets of reprisals against them in response to the
two public campaigns and to McClure's statements to Holland-
Brown at the September 15, 2016 hearing.

The first set of alleged reprisals was directed at McClure
alone.  On December 8, 2016, Defendant Lewis Jones ("Jones")
wrote a letter to ATU International President Lawrence Hanley
("Hanley") requiring McClure to obtain permission prior to
entering union property to conduct union business.  Def.'s Mot.
Ex. K, ECF No. 29-12.  The letter also stated that McClure's
badge access to various MTA facilities was being suspended.  Id.

On February 21, 2017, Defendant Earl Lewis ("Lewis") wrote
another letter to Hanley reiterating the access restrictions in
the December 8, 2017 letter, citing McClure's "unprofessional
and threatening behavior."  FAC ¶ 65.  This letter referred to

_____

[3] Defendants dispute Plaintiffs' version of the facts, citing
internal memoranda which described McClure's interaction with
Holland-Brown as unprofessional, "combative," and "belligerent."
Def.'s Mot. Exs. D, E, F, ECF Nos. 29-5, 29-6, 29-7.

[4] Holland-Brown's EEO Charge states that McClure made "personal
attacks, threats, derogatory comments, volatile outbursts,
threatening physical gestures, and intentional efforts to
undermine my professional credibility and supervisory
authority."  Def.'s Mot. Ex. H, ECF No. 29-9.

Article (5) of a long-standing Collective Bargaining Agreement

between MTA and Local 1300, which states:

> UNION business shall not be conducted on MTA
> property, or on MTA's paid time without the
> permission of a department head or a
> representative authorized by him/her.
> However, it is understood that every effort
> shall be made to cooperate with such UNION
> representative when and if such permission
> is sought for the purpose of legitimate
> UNION business.
>
> The UNION further agrees that its officers,
> while on leave of absence, shall comply with
> all MTA regulations pertaining to entry into
> any part of the MTA's premises, vehicles or
> other MTA property.

Def.'s Mot. Exs. C, M, ECF Nos. 29-4, 29-14.

When McClure tried to attend grievance hearings held on MTA

business property on March 31, April 26, May 4, and May 11

(which included hearings conducted by Holland-Brown), he was

told to leave and in two instances escorted off the premises by

the police.[5]  Id. ¶¶ 80-98.  However, on June 1, 2017 – one month

after Plaintiffs filed their original Complaint in this action –

the Defendants notified McClure that Holland-Brown had retired

so that the requirement for him to ask permission to enter the

MTA facilities would no longer be in effect.  Williams Decl. ¶

16, ECF No. 29-2 ("On this date, I notified David McClure and

Local 1300 by letter that prior permission from me or Deputy

---

[5] Defendants state that McClure attended March 22 and March 31
hearings without incident after properly seeking permission to
enter the building.  Williams Decl. ¶ 14, ECF No. 29-2.

Administrator Tollini to enter nonpublic MTA property was no longer required"). However, McClure's ability "to open the doors of locked offices and facilities" was not reinstated. Id.

The second set of alleged reprisals applies to McClure as well as to "other Local 1300 officers." Id. at ¶ 4. Specifically, whereas McClure had access to "all" areas of MTA property where Local 1300 members work by use of his identification card, his open access privileges have now been revoked. Id. McClure now has the "same access as any other non-employee of MTA-that is, less access even than a rank-and-file member of Local 1300." Id. ¶ 123. Plaintiffs fear that the access ability of other full-time Local 1300 officers will also be revoked or reduced by Defendants. Id. ¶¶ 4, 124. However, they do not allege that the access privileges of other full-time Local 1300 officers have actually been revoked or reduced.

Plaintiffs argue that certain actions taken by Defendants support their contention of retaliatory intent. For example, in May 2017, Local 1300 requested that eight of its members be granted leave from MTA to conduct union business. Id. ¶ 129. MTA originally granted that request, but then rescinded it after the members on leave distributed a leaflet that was critical of the MTA and its officers. Id. ¶¶ 129-133. Plaintiffs allege

that since that time, the MTA has refused routine requests for union leave by Local 1300.  Id. ¶ 134.[6]


II.   LEGAL STANDARD

Defendants have filed a motion to dismiss, or in the alternative a motion for summary judgment, and have submitted materials in addition to the Complaint regarding these motions. The Court has not excluded these materials from consideration.

When "matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d); Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998).  Because the Court has relied upon supplemental affidavits and documents filed outside of the pleadings, it will treat the pending motion as a motion for summary judgment.

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

---

[6] At the hearing, Plaintiffs clarified that they do not seek to impose liability on Defendants by virtue of these denials of leave.  Rough Hearing Tr. 47:10-14 (Dec. 1, 2017) (Counsel for Plaintiffs: "I want to be clear that we are not seeking liability based on the denial of union leave.").

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement:  the Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically.  After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law.  <u>See, e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-323 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Shealy v. Winston</u>, 929 F.2d 1009, 1012 (4th Cir. 1991).  Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present <u>evidence</u> of specific facts from which the finder of fact could reasonably find for him or her." <u>Mackey v. Shalala</u>, 43 F. Supp. 2d 559, 564 (D. Md. 1999) (emphasis added).

When evaluating a motion for summary judgment, the Court must bear in mind that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  <u>Celotex</u>, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

III.  DISCUSSION

    A. <u>Counts I and III: Punishments and Reprisals for Protected Speech</u>

In Counts I and III, Plaintiffs allege that Defendants unlawfully punished them for engaging in protected speech or carried out unlawful reprisals for "other speech" protected by the First Amendment.  At the motions hearing, Plaintiffs explained that these two Counts are based on the same legal theories so that they will be addressed together.

    i. <u>Legal Standard</u>

A successful retaliation or reprisal claim requires plaintiffs to establish that (1) they engaged in First Amendment activity, (2) defendants took action that adversely affected their First Amendment Rights, and (3) there was a causal relationship between the protected activity and defendants' conduct.  <u>See</u> <u>Constantine v. Rectors & Visitors of George Mason Univ.</u>, 411 F.3d 474, 499 (4th Cir. 2005).

Because a retaliation claim seeks to protect the chilling of free speech, the adverse effect must be "something more than a 'de minimus inconvenience'" to the plaintiffs' exercise of First Amendment rights.  <u>Id.</u> at 500 (internal citations omitted).  The Fourth Circuit uses an objective standard for evaluating whether there has been an adverse effect on free

speech, i.e., whether "the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Id. Plaintiffs do not need to establish an actual deprivation of First Amendment rights to establish a retaliation claim. Id. Retaliation can be present where an action has chilled the exercise of First Amendment rights. Plaintiffs' "actual response to the retaliatory conduct provides some evidence of the tendency of that conduct to chill First Amendment activity" but it is not dispositive. Id.

ii. Analysis

Plaintiffs' retaliation contention is based on two sets of alleged reprisals: first, that Defendants restricted McClure's attendance at grievance hearings with the December 8, 2016 letter by requiring that he seek permission before entering MTA premises; second, that Defendants continue to restrict McClure's key card access to areas of the MTA facilities for which he previously enjoyed access.

Defendants challenge Plaintiffs' retaliation theories, including arguing that the alleged reprisals do not constitute an adverse effect and are not causally related to Plaintiffs' protected speech. Defendants contend that the alleged reprisals were in fact valid actions taken in response to McClure's verbal

10

abuse of Holland-Brown at a disciplinary hearing and a corrective action taken by a government agency to correct a prior problem of unchecked access. Def.'s Mot. at 27, ECF No. 29-1 ("Allowing a non-employee to keep keys that granted unusual and expansive access to sensitive facilities was unwise.")

Plaintiffs concede that they do not have an absolute right to enter MTA property. Pl.'s Resp. at 1-2, ECF No. 32. Rather, Plaintiffs argue that Defendants have engaged in the alleged reprisals in retaliation for Plaintiffs' First Amendment protected speech. Id. Specifically, Plaintiffs contend that Defendants' argument that the reprisals were taken in response to McClure's alleged abusive behavior to Holland-Brown is simply pretext. Id. at 9. As support, they argue that the reprisals were disproportionately severe compared to the alleged verbal abuse against Holland-Brown, especially because the key card access restrictions continued even after Holland-Brown retired. Id. at 10. At the hearing, Plaintiffs stated: "even if it were true that the statements made at the hearing were what prompted this reaction, those are also First Amendment protected speech." Rough Hearing Tr. 3:23-25 (Dec. 1, 2017).

Plaintiffs also argue that the broader restrictions on access and the refusal to permit leave for union workers have a chilling effect on speech. Pl.'s Resp. at 16, ECF No. 32.

There appears to be no dispute that Plaintiffs engaged in protected activity under the First Amendment. Thus, the Court will address whether there is a dispute of material fact as to the remaining two Constantine factors: i.e., whether Defendants took action that adversely affected Plaintiffs' First Amendment Rights, and whether there was a causal relationship between the protected activity and the Defendants' conduct.

## 1. Causation is Assumed

For purposes of the instant motion, the Court accepts Plaintiffs' contention that the causation element has been adequately established by Plaintiffs because McClure's statements at the hearing constitute protected speech. Attending a disciplinary hearing on behalf of a union member constitutes an activity protected by the First Amendment. Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 464 (1979) (noting that the First Amendment "protects the right of associations to engage in advocacy on behalf of their members").

Specifically, the Court will assume that Plaintiffs have evidence adequate to establish causation between Plaintiffs' exercise of free speech rights (i.e., the public campaigns carried out by McClure) and the alleged retaliation (i.e., restricting access by McClure and union members after the incident with Holland-Brown). For the purposes of this motion,

Defendants do not dispute that the MTA took action to some
degree motivated in reaction to Plaintiffs' protected speech.
Rough Hearing Tr. 6:5-12.


## 2. Lack of Adverse Effect

Plaintiffs have not produced evidence adequate to permit a
reasonable jury to find a cognizable adverse effect imposed by
the alleged reprisal actions.

As an initial matter, Plaintiffs overstate the nature of
McClure's alleged "ban" from the MTA property.  FAC ¶ 63.  The
December 8, 2016 letter does not ban McClure but merely states
that McClure must obtain permission prior to entering premises
to conduct union business.  Def.'s Mot. Ex. K, ECF No. 29-12.
Plaintiffs have not produced evidence that a request to enter
from McClure has ever been denied or that a reasonable request
would not be granted.  Williams Decl. ¶ 14, ECF No. 29-2.  For
the reasons stated below, the Court finds that the letter's
requirement that McClure seek permission before accessing a non-
public space does not constitute an "adverse action" under
Constantine.

The Court also finds that the areas to which Plaintiffs
seek to have unrestricted access are non-public fora, not
locations for expressive activity.  It is true that Defendants
have previously granted Plaintiffs access to this space.  See,

13

e.g., Def.'s Mot. Ex. Q at 2, ECF No. 18 ("MTA has granted
access privileges above and beyond those outlined in the CBA as
a courtesy; however, when Mr. McClure's behavior became so
openly hostile, disruptive, and harassing, this courtesy was
necessarily revoked.").  However, the Court is not persuaded by
the Plaintiffs' argument that the use of an area for employee
grievance hearings converts non-public MTA property into a
"limited public forum."  The pertinent internal hearings discuss
private personnel matters and are not "created by government
designation of a place or channel of communication for use by
the public at large for assembly and speech, for use by certain
speakers, or for the discussion of certain subjects."  <u>Child
Evangelism Fellowship of MD, Inc. v. Montgomery Cty. Pub. Sch.</u>,
457 F.3d 376, 382 (4th Cir. 2006).

     In <u>Perry Educ. Ass'n v. Perry Local Educators' Ass'n</u>, 460
U.S. 37, 47 (1983), the Supreme Court rejected a similar
argument.  Defendants argued in <u>Perry</u> that "because of the
periodic use of the system by private non-school connected
groups," the school mail facilities have "become a 'limited
public forum.'"  <u>Id.</u> (internal citations omitted).  The Supreme
Court held that argument to be unpersuasive, and explained that
although it was relevant that non-affiliated groups used the
internal school mail, the mail system ultimately was not open
for use by the general public.  <u>Id.</u>  Rather, "[p]ermission to

14

use the system to communicate with teachers must be secured from the individual building principal." Id. In such a case, the Court reasoned, "selective access does not transform government property into a public forum." Id.

Viewed realistically, McClure was not "banned" from the MTA premises or from the disciplinary hearings. Rather, as was the case in Perry, he was merely required to seek permission before using a non-public space and there is no evidence to establish Defendants have in the past or will in the future unreasonably deny requests for permission.

It is not an unreasonable burden on a non-employee to require permission from an employer to obtain access to non-public spaces on the employer's premises. The need to request permission would not deter "a person of ordinary firmness" from seeking to exercise First Amendment rights in the space if he or she wishes to do so. Defendants have even stated on the record that standing permission could be granted. Rough Hearing Tr. 57:11-19 (Dec. 1, 2017) (Counsel for Defendant stating that "[a] standing order for permission say for grievance hearings, for monthly meetings . . . could be granted, or not. But if it's reasonable we're compelled to grant it.").

Plaintiffs have presented no evidence to establish that they sought permission to attend any hearing and were denied, much less unreasonably denied, the opportunity to do so.

Williams Decl. ¶ 14, ECF No. 29-2.[7]  The fact of McClure's prior

requests for permission "provides some evidence" of the fact

that his First Amendment rights have not been chilled by the

need to request permission.  Constantine, 411 F.3d at 500.

Moreover, the prior permission requirement is no longer in

effect.  Williams Decl. ¶ 16, ECF No. 29-2 ("I notified David

McClure and Local 1300 by letter that prior permission from me

or Deputy Administrator Tollini to enter nonpublic MTA property

was no longer required.").

The need to request permission to enter MTA facilities is

also consistent with Article 5 of the Collective Bargaining

Agreement.  Article 5 states that "UNION business shall not be

conducted on MTA property" without "the permission of a

department head or a representative authorized by him/her."

Def.'s Mot. Ex. C, ECF No. 29-4.  Moreover, Article 5 requires

officers on leave of absence (like McClure) to "comply with all

MTA regulations pertaining to entry into any part of the MTA's

premises, vehicles or other MTA property."  Id.

---

[7] At the hearing, McClure argued that for at least one hearing
date, May 4, 2017, he thought he had received permission because
his Recording Secretary accepted an Outlook calendar invitation
for the hearing and notified the MTA's scheduling assistant that
McClure would be the union representative attending.  The Court
finds that even if accepting an Outlook calendar invitation
constitutes a "request" for permission, the actual permission
was never provided by the MTA.

Although McClure states that he does not seek to enter private offices or areas containing personnel files, retention of his prior unrestricted access would enable him to enter all areas of the MTA premises. Rough Hearing Tr. 29:15-17 (Dec. 1, 2017) (Counsel for Defendant stating that "Local 1300 members work in areas with management offices and yes, with a key Mr. McClure would have unrestricted, unsupervised access to those offices.").

Even if McClure now has only the "same access as any other non-employee of MTA," or "less access even than an employed rank-and-file member of Local 1300," FAC ¶ 123, this would not warrant granting Plaintiffs' claims. Although he is union president, McClure is not presently an employee of the MTA and would reasonably not be accorded that same level of access. For example, McClure requests access to all of his union members' bus garages, Rough Hearing Tr. 22:3-8 (Dec. 1, 2017), but those garage spaces are reserved for employees who are working and carrying out their duties.

Plaintiffs have not established a past legal right to unfettered access to employee workspaces, even though MTA had allowed such access in the past. In other words, the MTA should not be held to have violated a constitutional right for depriving McClure of an alleged right when he did not have the right in the first place. Moreover, the Court does not find

reasonable Plaintiffs' apparent contention that the prior
practice of the MTA created a present or future legal right of
access for McClure or other Plaintiffs.

Ultimately, Plaintiffs' arguments are similar to those
alleged by plaintiffs in Am. Civil Liberties Union of Maryland,
Inc. v. Wicomico Cty., Md., 999 F.2d 780, 786 (4th Cir. 1993).
In Wicomico County, Defendants had instituted an initial set of
access restrictions for paralegals who sought to enter the
premises and visit with inmates.  The warden "negotiated an
initial accommodation" allowing greater access "but later
replaced it with a more stringent set of restrictions."  Id.
The Fourth Circuit stated that "[t]he [later] change in
conditions placed [plaintiffs] in the same position they were in
before . . . subject to the reasonable requirements imposed by
the warden upon visits to inmates.  We do not find this
withdrawal of an accommodation sufficiently adverse to support a
constitutional claim.").  Id.  Likewise, although McClure had
been granted unrestricted access in the past, his current access
restriction is not sufficiently adverse to support a retaliation
claim.

Plaintiffs' contentions about the possibility of future
access restrictions upon other Local 1300 officers are similarly
unpersuasive.  An affidavit submitted by Defendants explains
that "the MTA reviewed electronic records" of other full-time

18

Local 1300 officers referenced in the First Amended Complaint, and found that the access was consistent with the officers' respective positions (or lack thereof) at the MTA.  See Williams Decl. ¶ 17, ECF No. 29-2.  For example, the affidavit states that with regard to some of the officers, the "normal practice of MTA is to suspend the access of individuals whose employment is terminated or who take extended leaves of absence."  Id.  The Court finds that other Local 1300 officers did not suffer a cognizable adverse effect in response to any alleged protected speech.

Accordingly, Plaintiffs have failed to provide evidence from which a reasonable jury could find that Defendants have violated Plaintiffs' rights guaranteed by the First Amendment.


B. Count II: Denial of Freedom of Association

"The First Amendment protects two types of association: intimate association and expressive association."  Iota Xi Chapter Of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 146 (4th Cir. 2009).  Intimate association relates to entering and maintaining an "'intimate human relationship,'" and expressive association is the "'right to associate for the purpose of engaging in those activities protected by the First Amendment—

speech, assembly, petition for the redress of grievances, and the exercise of religion.'" Id. (internal citations omitted).

"[A] constitutionally protected right to associate for expressive purposes exists if the activity for which persons are associating is itself protected by the First Amendment." Willis v. Town Of Marshall, N.C., 426 F.3d 251, 258 (4th Cir. 2005). This right is "inseparable" from the right to speak freely. Edwards v. City of Goldsboro, 178 F.3d 231, 249 (4th Cir. 1999).

Plaintiffs argue that the access restrictions "prevent plaintiff McClure and other Local 1300 officers from speaking with, communicating with, and representing Local 1300 members in the way that the plaintiff Local 1300 officers have done in the past." FAC ¶ 149. Specifically, Plaintiffs argue that they have legal duties to represent their Local 1300 members that have been limited as a result of this access restriction. Id. ¶ 150.

Defendants argue that the First Amendment does not require the government to listen, respond, or recognize an association and bargain with it, citing Smith, 441 U.S. at 464. Def.'s Mot. at 21, ECF No. 29-1. Moreover, they argue, the right to associate does not provide a right to access keys for a facility that the association does not own. Id. at 22. They emphasize that Local 1300 members "are free to speak and associate as they choose" outside of the MTA property. Id. at 23.

20

The Court finds that Plaintiffs have failed to present evidence adequate to permit a reasonable jury to find a denial of their First Amendment associational rights. As discussed above, requiring Plaintiffs to request permission from MTA before entering non-public spaces imposes a de minimus inconvenience. Plaintiffs are not prevented from carrying out association activities; they are merely required to seek permission before being present to carry out a specific type of activity regarding private personnel matters that occurs on non-public premises. The right of association cannot be properly understood to provide an unrestricted right to assemble on private property at any time and for any purpose.

If Plaintiffs' argument is that the MTA refuses to bargain with them or acknowledge them, the Court does not find that contention to be persuasive. The First Amendment associational right does not include a right to have the government "to listen, to respond or, in this context, to recognize the association and bargain with it." Smith, 441 U.S. at 465.

Accordingly, Defendants are entitled to summary judgment in regard to Plaintiffs' First Amendment associational rights claims.

## C. Count IV: Unconstitutional Seizure

McClure alleges that he was escorted from the building by police on March 31, 2017 and April 26, 2017.  FAC ¶¶ 80-93.  On those two dates, he does not allege that he requested and received permission to be on the premises.  McClure contends that he was subjected to unconstitutional seizures when he was removed from the premises by the police.  FAC ¶¶ 158-162.  Specifically, he argues that he was lawfully representing his union members at the hearing, so that there was an unlawful seizure of his person when he was removed from the premises while at the grievance hearing.  Id.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures.'"  United States v. Jones, 678 F.3d 293, 298 (4th Cir. 2012) (internal citations omitted).  A "seizure" occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen."  United States v. Stover, 808 F.3d 991, 995 (4th Cir. 2015), citing Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968).  The "reasonableness" of a search or seizure is determined "'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"  Jones v.

<u>Chandrasuwan</u>, 820 F.3d 685, 692 (4th Cir. 2016) (internal citations omitted).

Because Plaintiffs do not contend that McClure had requested and been granted permission to be on the premises, at the times in issue, McClure was a trespasser, meaning he had no right to be on the premises and was properly removed. <u>See, e.g.</u>, Md. Code Ann., Crim. Law § 6-409 (prohibition against trespass on a public building or grounds); Md. Code Ann., Crim. Law § 6-403 (prohibition against trespass on private property).

At the motions hearing, Plaintiffs contended that MTA's inclusion of McClure's name on the hearing calendar invitation constituted the needed grant of permission to attend. Rough Hearing Tr. 10:13-25 (Dec. 1, 2017). This contention–although possibly a basis for mitigation of a trespassing charge-is insufficient to provide the basis for his constitutional claim against Defendants. In the instant case, even if McClure's allegation of being escorted from the property is held to be a "seizure," it was not objectively unreasonable because he was reasonably deemed by the MTA to be a trespasser on the property at the time.

Accordingly, Defendants' Motion for Summary Judgment on Count IV is GRANTED.

IV.    MOTION FOR DISCOVERY

A Rule 56(d) affidavit for discovery must explain why, "for specified reasons, it cannot present facts essential to justify its opposition" without the needed discovery.  Fed. R. Civ. P. 56(d).  "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery."'  Hamilton v. Mayor & City Council of Baltimore, 807 F. Supp. 2d 331, 341–42 (D. Md. 2011) (internal citations omitted).

Plaintiffs request leave to engage in a wide range of discovery for purposes of their response to the instant motion. They seek discovery on "how the defendant public officials and their subordinates viewed or treated or commented internally on the campaign of plaintiffs McClure and Local 1300," "how and why and when defendant officials made the decision to bar McClure from MTA property," "the good faith of defendants in the investigation of McClure," "why Ms. Holland-Brown chose to tender her resignation on the eve of a preliminary injunction hearing in this case," "why defendants chose to lift the ban of McClure from attending grievance hearings at that time," "the past practice of MTA in allowing the union officers to have access to MTA property without permission and by use of card swipes," "how the defendant officials viewed the campaign of McClure and Local 1300 to oppose the BaltimoreLink project," and

"why the defendant officials withdrew the union business leave of certain Local 1300 members."  Pl.'s Mot. ¶ 8, ECF No. 33.

These requests are based on Plaintiffs' position that intent is an element of a retaliation claim.  Defendants do not dispute that, for the purposes of this motion, Plaintiffs' allegations regarding intent must be accepted as true.  Hearing Rough Tr. 6:5-15 (Dec. 1, 2017).  Because this limited concession has been made, and because the Court has assumed the existence of retaliatory intent in Plaintiffs' claims, the requested discovery is not needed for the instant motion.

Accordingly, Plaintiffs' motion for Rule 56(d) discovery shall be DENIED.

V.  CONCLUSION

For the foregoing reasons:

1. Defendants' Motion to Dismiss, Or in the Alternative,
   For Summary Judgment [ECF No. 29] is GRANTED.

2. Plaintiffs' Motion for Discovery in Response to
   Defendants' Motion for Summary Judgment [ECF No. 33]
   is DENIED.

3. All claims against all Defendants are dismissed.

4. Judgment for Defendants shall be entered by separate
   Order.


SO ORDERED, this Friday, December 15, 2017.


                         _____/s/_____
                            Marvin J. Garbis
                      United States District Judge